Our first case of the day is cause number 19-40740. Tercero v. TX Southmost College. Are the parties ready to proceed? The appellant is ready, your honor. Appellee is ready, your honor. Appellant, you may proceed. Good morning, and may it please the court. My name is Don Cruz. I'm here today representing Dr. Lily Tercero, who, until the events of this case, served as the president of Texas Southmost College. Dr. Tercero had a three-year employment agreement that included a clause that allowed the college to terminate her even without cause. But if it did so without cause, it would be obligated to pay her the remaining three years of salary. As the court knows from the briefing, TSC took a very different path. In August 2016, it quite publicly accused Dr. Tercero of dishonesty, criminality, and professional misconduct, culminating in a hearing the following month that the jury found at trial the district court upheld from a post-judgment challenge and is not challenged on appeal, was constitutionally insufficient to satisfy due process. So Dr. Tercero had gone to trial on a breach of contract claim seeking her salary and a due process claim seeking those damages. And I plan to cover those two issues in that order, beginning with the reason the district court gave for dismissal of the contract claim after a trial, which was its invocation of the situation in the immunity issue in this case because the appellee is defending the district court's dismissal on a different basis than the district court advance. So I may be covering two sets of ground here. But both sides in this court agree that the district court's 11th Amendment rationale was incorrect. In particular, TSC agrees that it is not an arm of the state under the 11th that it ever has asserted 11th Amendment immunity. And unless it does today, it will never have asserted 11th Amendment immunity. And TSC does not dispute that any 11th Amendment immunity would be waived under the theories that we put forward in our appellant's brief. And both sides also agree that TSC would never have had substantive immunity from liability under Texas law because Texas does not afford immunity from liability for contract actions. And this is a contract claim. Instead, what TSC has advanced to this court is a suggestion that there's another source of immunity from suit, which they anchor in state law. They refer to this as immunity from suit. They sometimes call it a substantive state law immunity. And at one point, they refer to it as a retained immunity from suit. As we briefed, TSC's position on this is contrary to what we think the basic principles are of immunity from suit in federal court that have been settled in the circuit at least since Myers versus Texas and from Supreme Court's guidance in Alden versus Maine or Northern Insurance Company versus Chatham in its opinions. Calling this an 11th Amendment issue is something of a misnomer because it encompasses all of this concept of state sovereign immunity that predated the enactment of the Constitution. And the courts have referred to that as the 11th Amendment as a way to talk about the federal interest and the way the federal courts protect that preexisting state law immunity. But as the Supreme Court has held, and as this court has recognized, there is not a distinct retained immunity that exists outside of the 11th Amendment that would allow a litigant or a local government entity to bypass the basic requirements of the 11th Amendment. If the court does address the 11th Amendment issue that's that TSC is a local government entity that does not have the dignity afforded to states on the 11th Amendment to be able to invoke it. It is not an arm of the state in the terminology that this court has used. As we've noted, it is a junior college district in Texas, which is a particular kind of local government entity. It covers two counties and three school similar junior college district in one of the leading cases, Hander versus San Jacinto Junior College. I'm sure Sarah is aware that the court has in some cases said that a district court must go through the analysis of looking at whether a entity is an arm of the state, but we think that doesn't apply for two reasons. The first is most important is that TSC has not put it into dispute in this case. To the extent that involves factual issues, TSC conceded in its pleadings and it's never put into dispute these facts. And the second reason is that this court does have an on-point precedent in the Hander case, and TSC has not advanced a reason why this court should depart from its own clear precedent about a junior college district. On the immunity question, TSC points to two things that may be One is this question of the case sort of exemplified by Morgan versus Plano Independent School District situations where this court has looked to Texas law to see if there's an immunity from suit as part of its analysis of whether to use the collateral order doctrine to allow an interlocutory appeal. And I think the right way to understand these cases is looking at the litigant's interest in being hailed to court or having to answer discovery or to just to even answer for a claim on its merits. These are not aspects of Texas law in which the state is trying to put its finger on the scale for forum selection to pick one court over another, which is the classic kind of procedural issue protected by federal immunity from suit that this court and federal law. So there shouldn't be any tension in that, in between those cases. The other tension that is noted by TSC is with some district with a potential tension is a Texas statute, Chapter 271 of the Texas Local Government Code, that a number of district courts have cited in suggesting that a local government entity like this would have immunity from suit in federal court against a breach of contract claim. We've pointed to a district court that held the opposite after analyzing the 11th Amendment issue. In my preparations for argument, I found others on both sides of this. It is a recurrent sort of question that is in the district courts where some of them point to this statute and suggest that it is a basis for a local entity to get out of being held into federal court. None of those courts that I've seen that say that discuss the principles of the 11th Amendment, discuss Myers or this court's authority about immunity from suit being decided as a federal question under federal law. And so our suggestion is that they are simply misreading the effect of this, that this statute should be seen by the court as similar to the Louisiana statute that was at issue in United Disaster Response and NRA Allied Signal, that a state cannot, by statute, effectively vest 11th Amendment immunity in a local government entity that would not otherwise have that immunity. I'm sorry, counsel. It is within the state's power to determine the circumstances under which it's going to waive, put a pin in them, whatever kind of immunity it is. Obviously, they can waive it or reserve it. And the text of this particular provision plainly says that they do not want the waiver to apply to breach of contract suits in federal court and they being the state legislature. They do. There are two aspects of that answer, Your Honor. The first is to the extent this statute applies to an entity that is an arm of the state, then the meaning of the statute is that the statute is not a legislative waiver of that 11th Amendment immunity. But we think the correct reading of United Disaster Response and the principles therein are that to the extent that it would apply to something that is not an arm of the state, that does not already have a preexisting 11th Amendment immunity to be waived, that it would not bind the hands of a federal court. And that's how we would reconcile those two. And so we're giving some meaning to the statute. It has some effect. It is a declaration that there is not a legislative waiver, but it does not have the effect that this court suggested was prohibited in United Disaster Response of divesting the court of jurisdiction. Before we move on past this point, what would be an example of an arm of the state that would be covered by this provision in Chapter 261? Because I'm trying to think of the circumstances under which you could be both an arm of the state and also subject to the local government code. I'm not sure of a good example, Your Honor. I know that this court in the Clark factors has six factors it sets out to analyze, only one of which would be looking at a statute like this. So under the Clark test, it's possible for this court to reach a different answer about whether something is an arm of the state on the 11th Amendment than Texas has for its own local purposes chosen to classify it. So I don't have an example for that. If I could turn to the second claim of the case involving due process. And we suggest the most significant part of this claim is that liability has been determined with finality in Dr. Tresero's favor. We have a favorable jury verdict on liability. The district court rejected the post-judgment challenges. There's no cross-appeal or even cross-issue that would challenge that. The district court's only rationale for entering nominal damages was a conclusion that there was not evidence of causation. And we believe that this was applying too high a standard to too narrow a time period of the events in the case. And one way to think about this is to ask, you know, to what sorts of events in the timeline do the damages in this case have to be anchored? And it's useful to think about the chronology of what's happening. There are... I want to make sure I understand. So are you arguing there doesn't need to be any evidence of causation? Are you arguing that the district court set the standard too high in terms of what evidence was required in support of causation? I don't understand your argument. We're arguing the latter. The district court, it's even more clear in the appellee's brief than the district court's opinion. But the district court seems to suggest that we need solely from the defects in the hearing. And the appellee's brief suggests, and their Rule 50 motion suggests that any other fact that might have caused damages would be enough to defeat our claim. But we read Wilson v. Taylor as applying a normal causation-type standard, that we have to show that this violation contributed to the damages, not that the damages were caused by the deprivation of process. And in that connection, what's the evidence that shows that there was some contribution to the damages? So this is where the timeline comes into play, Your Honor. What the evidence we developed was that damages that flowed from these public accusations being made of the professional misconduct, dishonesty, and criminality, or which she never received a constitutionally sufficient hearing. And a useful way to think about that is, what if there had been not even this sham hearing, but no hearing at all? It would be very clear where you would anchor the causation. You would look at those accusations for which she never had a sufficient chance to answer them and look to see whether there's harm from those. Here, they provided a constitutionally insufficient hearing. That's determined. And what the district court has done effectively is let the district use a constitutionally insufficient hearing to absolve itself from those damages. And we've looked at the cases that it relied on, the Hill v. Potnack and the Wilson v. Taylor. And there's a distinction when there's never a sufficient hearing given, as opposed to when there's a second, later sufficient hearing given. When there's a second hearing, when there's some hearing that is sufficient, the court narrows down the time period and looks for the gap. But in this case, there was never a sufficient hearing. Dr. Tussera has never had that constitutionally sufficient, meaningful opportunity to respond. So we have evidence of her reactions and the damage caused by the accusations. We have evidence that in her discussions with future prospective employers, they not only discuss those accusations, but the hearing, her testimony about that, refers to the hearing. And we have... She actually was a finalist for a position, is that right? That's correct, your honor. And so is it your contention that she became a finalist before they knew about these accusations and then that's why she wasn't hired? I guess in my examination of it, I didn't see that she linked the failure to get that job to these accusations necessarily. I think her testimony does say it's to the accusations and the hearing. I don't know the timing of when she became a finalist or when they discovered the hearing, the people who were interviewing her. All right, because I guess my thinking is she never would have become a finalist if they knew about the accusations and that's the reason they didn't hire her. And according to her, she became a finalist. I think what you're saying, your honor, is correct. I don't think she would be a viable candidate with these accusations out there without a chance to respond to them in a meaningful way. Your honor, I see that my time has expired. All right, thank you, counsel. Thank you. Mr. Brush. Good morning and may it please the court. My name is Jonathan Brush. I'm the attorney for the Texas Southmost College District, the Appalachia. As I'll explain today, the district court's final decision should be affirmed because it correctly decided that the college was entitled to governmental immunity from suit as to the breach of contract claim and correctly found that there was no evidence of causation of damages that was tiable to the due process violation that the jury found. I will begin with the immunity question first and I think Judge on the other side were very illuminating. We focus on section sub chapter I of the Texas local government code. It is the local government code for a reason because it applies to local governmental entities in the state of Texas and by statute that encompasses public school districts and junior college districts. So we know that this statute was designed squarely to speak to immunity for governmental entities such as the college. Opposing counsel is correct. The college has never asserted 11th Amendment immunity. None of our arguments rest on 11th Amendment immunity. Rather, they rest exclusively on state law immunity to a state law claim. This court has routinely recognized Texas governmental immunity jurisprudence, finding that governmental immunity contains two strands, a strand of immunity from suit, which is not a mere defense. It is a complete bar to lawsuits and divest support of subject matter jurisdiction. That's what this court recognized in Plano versus Morgan Independent. I'm sorry, Morgan versus Plano Independent School District in the 2013 opinion. In that case, because it's a complete bar to suit, it's more than a procedural component of Texas law. It's a substantive component of Texas law. Um, and Judge Oldham, as you noted, the court, the Legislature reserves the authority to waive immunity. Only the Texas Legislature can waive that substantive governmental immunity to a state law claim. Here, the only applicable waiver is found in subchapter I of Chapter 271 of the Texas local government code, and the relevant provision here is section 271.156, which provides that the in federal court. Now, in Dr. Tercero's brief, she argues that the statute doesn't confer immunity, it doesn't expand immunity, and that the Texas Legislature has in fact waived immunity to breach of contract claims. That's true to a point. The Texas Supreme Court has on at least two occasions noted that the waiver of immunity only applies to certain breach of contract claims, and that those breach of contract claims must meet each of the subconditions of the chapter. The waiver provision provides that the waiver of immunity applies to contracts subject to the terms and conditions of this chapter. In Zachary Construction Court versus the Port Authority of the City of Houston, which is found at 449 Southwest 3rd 98, the Texas Supreme Court expressly listed the fact that all of the subsections of that chapter are conditions of the waiver of immunity and expressly listed section 271.156. How do you explain United Disaster Responses and what we said in that case? How do you square that with the conclusion you're asking us to reach here? Yes, your honor. United Disaster Response in the first instance didn't involve a question of immunity at all. It was a state statute that attempted to create a forum selection clause, drilling down on the authority. Louisiana had abolished the concept of common law immunity, both by its constitution and by statute. This is laid out in our briefs. The case didn't involve question of immunity at all. It merely involved the question of whether or not a governmental entity that lacked 11th Amendment immunity but that had waived common law immunity could be sued in federal court under diversity jurisdiction. So we have multiple distinctions here. One, United Disaster and Allied Signal did not involve immunity at all because Louisiana had long since abrogated its own immunity. Second, this case is not a diversity jurisdiction case. It's a supplemental jurisdiction case. The concerns the court articulated about forum selection are absent here because Dr. Tercero chose the federal forum. She picked the forum in which to litigate her state law breach of contract claim. And as the court noted in its United Disaster, the critical aspect is that has waived common law immunity. Here, Texas has waived common law immunity to breach of contract claims subject to the conditions that the legislature has imposed. And critical to this case is the condition that there's no waiver of immunity in federal court. The Texas legislature obviously took care in crafting this statute as a way to meet the purposes underlying state law governmental immunity, which is to protect the public fist and exercise control over the public funds. The legislature chose the only way of claims in state court. That's part of the legislature's carefully crafted regime, and this court would be abrogating a Texas statute if it held otherwise. Importantly, all litigants who choose to enter into a contract with a local governmental entity are in the same position. They're entering into a contract that will only be enforceable in Texas state court. It would be no different than if the legislature had chosen not to waive immunity to contract claims at all. If there had been no waiver statute, this court would not be, the federal courts would not be able to exercise jurisdiction over a breach of contract claim in the absence of immunity. So if I understand TSC's position, TSC would be amenable to suit in state court for a breach of contract claim because there would be no what I would call state sovereign immunity, right? That is the immunity would normally apply as a matter of the federal constitution to the state. So that's what I mean by state sovereign immunity. There would be no state sovereign immunity if it's applied to TSC, and there would be no governmental immunity or statutory immunity provided by the Texas legislature to TSC for a breach of contract claim in state court. Am I understanding that correctly? Yes, your honor. With one caveat, provided that the plaintiff could meet each of the elements and strictures of chapter 271. Of course, but in general, and assuming that there are none of those, I'm not hearing any of those other obstacles present in our suit. Normally what we would do when we see a state law claim that arises in diversity, whether it's in, whether it's under 1332 or supplemental jurisdiction in this case is we would try to figure out how the state courts would treat this claim. And it seems undisputed that the state courts would treat this claim by making TSC amenable to suit and making TSC amenable, I'm sorry, liable for money damages for breach of contract. I'm not sure I understand what would give the Texas legislature power to extend a broader non-constitutional immunity, right? Because we're not talking about state sovereign immunity. We're talking about some sub-constitutional, I call it statutory. I've heard it called common law. I realize it doesn't have names, but it's sub-constitutional and where the Texas legislature could somehow extend that to a non-arm of the state in federal court. What would be the best case that would suggest that could ever be done? Certainly. So first, before getting to the case, I agree with your summation that a Texas court would have jurisdiction over a breach of contract claim under the facts of this case. With respect to the Texas legislature extending an immunity, so that's actually not quite the correct framing. So under Texas law, and it goes back to one of the very first Texas Supreme Court cases, Hosner versus DeYoung decided, I think in 1846 or 1847, the state recognized as that common law that governmental entities were immune from suit as to all claims. So this is not a situation where the legislature has created immunity. It is a situation where the state, as part of its substantive law, the starting point is you cannot sue the government absent a clear and unambiguous statutory waiver of suit. That's part and parcel of a breach of contract claim or a tort claim in the state of Texas. It's not a statutory enactment that expands the scope of immunity. Properly understood, section subchapter I is a waiver of immunity that is part and parcel of any contract action. So it's not a question of the state extending immunity to a governmental entity. Well, before we get off the extending point, is there any doubt that but for chapter 271 of the local government code that Dr. Tercero could sue TSC in federal court? I mean, because I thought we all agreed that there is no federal constitutional immunity that would apply to TSC. So I would think the answer to that is no. To make sure, no, there is no federal constitutional immunity extending to TSC, and I would agree that but for this provision, which delineates the scope of waiver, Dr. Tercero, well, let me back up. No, Dr. Tercero would not be able to sue the college on a state law claim absent a waiver of immunity. A waiver of some state immunity that is not a federal constitutional immunity. That is correct. And what would be the case that says that? Okay, so this court, of course, has never considered this subsection of chapter 271. It's a case of first impression in that regards. This court could look to Morgan versus Plano Independent School District, where, by analogy, that case first came into the federal courts on federal constitutional grounds. The court knows it involved a First Amendment free exercise establishment clause claim. There was, under supplemental jurisdiction, a statutory claim under the Texas Religious Freedom Restoration Act. Through the course of many appeals to this court, the federal constitutional claims were winnowed down, and ultimately, what was left was this statutory cause of action. This court, looking to Texas substantive law, found that because the plaintiffs failed to meet a pre-suit notice requirement, found that that pre-suit notice requirement and the plaintiff's failure to meet it divested the federal courts of jurisdiction. So this court has been comfortable in the past with applying Texas substantive law to define the parameters of a Texas substantive claim. The thing I'm struggling with for Morgan is that the result in Morgan would have been the same, regardless of whether the plaintiff sued in state or federal court, on the state law claim, right? Whereas here, your result, or I should say Dr. Cesaro's result under your theory, is diametrically opposite based on her choice of forum, purely based on a statutory question of the Texas legislature passed in the local government code. And what I'm struggling with is what case would support that result? And so you're correct. The same result would have obtained in the Morgan case. The same result would not obtain here. I think this is the first time this court has wrestled with this type of question because it's a fairly unique statute in that it has a gradated waiver of immunity. Most waivers of immunity under Texas law are complete in that there's a waiver of immunity as to the cause of action. Here though, while I can't point the court to a specific case, the key though is that this court has always looked, and I think here again, Morgan is instructive, this court has always looked to how the Texas legislature has chosen to waive immunity. And in that case, the Texas legislature gave a required pre-suit notice, and this court credited that pre-suit notice. By extension, I think the same is true here. And as the court pointed out, Dr. Tercero chose this forum. This is not the situation where the college chose the forum. Dr. Tercero chose a federal forum to litigate a state law claim based upon state law and subject to substantive state law principles. And here, going back to the difference between a waiver statute and creation that we were discussing earlier, the background rule is no jurisdiction absent a waiver. And so, a plaintiff, any plaintiff has to take the waiver as it comes. They have to be able to meet each element of the waiver. So, in this case, the college moved for summary judgment on the damages limitations, which are themselves jurisdictional. The courts have an obligation to ensure that each element of a waiver is met in order to establish a state law claim. And that's what really what it boils down to is the substantive component of Texas law that's encapsulated in this immunity from suit. To frame the question as, is the state creating an immunity, creating an immunity that goes beyond what existed at common law? The answer to that is no. The state's not creating immunity. The state is waiving immunity subject to certain limitations. And this court has always applied the limitations that the Texas legislature has put on a waiver. I'd like to briefly turn to the damages question on the procedural due process component if there are no further questions on the immunity provision. And Judge Graves, I think you hit the nail on the head in terms of pointing to what evidence supports the damages award. The district court properly found that there was no evidence supporting an award of anything beyond nominal damages for a procedural due process claim. Early in my colleague's presentation, he discussed the facts, which the court is well familiar with, and noted that the allegations against Dr. Tercero were made public in August of 2016. One month later, she held the hearing was held. Dr. Tercero's testimony was clear and unequivocal that her injury arose from those public allegations that that's what she felt had damaged her. She offered no testimony, no evidence that connected the predetermined hearing to any injury, to any new injury. And as this court well knows under Kerry v. Bifus and its progeny, it's Dr. Tercero's burden to put on evidence that connects her damages to the constitutionally deficient injury. Now, it's really the term that was used was anchoring, and there's no anchor between Dr. Tercero's testimony and the predetermined hearing. Now, it's entirely possible that a plaintiff could proffer such evidence. Dr. Tercero didn't, and that's fatal to her claim. Her sole testimony was tied to the allegations that were lodged against her, which were made public. And so, Judge Graves, to your earlier question about what does the record say about how the employer learned, it's silent. But when it's silent, that means Dr. Tercero failed to carry her burden. But what we do know is that the allegations against her were made public prior to the predetermined hearing, and that's when she testified that the harm arose to her. For that reason, the district court properly found that there was no evidence to support a mental anguish award and that the only recoverable damages were nominal damages. The district court correctly reviewed the evidence. There's nothing that would support an award at all, much less an award of that magnitude, as the district court correctly noted in its alternative basis for decision. In conclusion, if the court has no further questions, the court should affirm the district court's finding by properly applying the plain text of Section 271.156 and holding Dr. Tercero to her burden to choose the correct form in which to bring a state law claim and to meet the elements of a waiver of immunity and also to find the district court correctly reviewed the evidence and determined that there was no evidence of causation supporting the damages award on the due process claim. Thank you, Mr. Barrett. Mr. Cruz, rebuttal. Thank you, your honor. May it please the court. I think the discussion between the court and counsel has touched on the key part of the immunity question, which is would the same result hold in state court? They have, I think TSC has almost but not quite completely conceded that yes, in state court, the claim could be brought. We've pointed the court to the case of Danmuth versus Trinity Valley Community College, a 2014 decision from the Texas Supreme Court that involves an employment contract by an employee of a community college. And the Supreme Court holds that under this Chapter 271, there is a waiver of immunity from suit. This is the kind of claim that can proceed to trial. This is not the kind of claim that in Texas state court would be shut down at the pleading stage or would be shut down before discovery. And those are the qualities of immunity from suit that this court looked to in Morgan versus Plano ISD or in other cases where the court has looked, for example, at immunity doctrines involving attorney misconduct or attorney liability, the court has asked whether Texas law has a substantive interest in stopping the litigation from even happening. And under this controlling Texas Supreme Court decision, that is not the kind of interest Texas is suggesting it exists in these employment contracts under Chapter 271. Turning briefly to the question of causation and damages, there's clearly a disagreement between the two sides about how to frame this question. One place the court could start is with the jury charge that was submitted, which asked the jury about proximate cause. There was no instruction given to the jury that it had to link damages to some specific period of time or that it was limited in how it would assign damages. And some of the cases that have been cited do have language like that in the jury charge. I imagine that if the district court's conditional grant of new trial on damages is carried out, that a new trial on damages in this case would include very specific instructions that the parties would know how to argue about to direct the jury. But this jury answering this question had sufficient evidence to conclude that there was a contribution between the misconduct here and the damages. And I'd point out to the timeline, TSC's argument on this is illuminating because what they're saying is that this constitutional interest is defeated by the making of the public accusations, that they can say absolutely anything they want prior to the hearing, no matter how hurtful. And it doesn't matter if they give a sufficient hearing, they're not liable for what they've done for the deprivation. We think that's focusing on the wrong thing. The hearing is not the violation. The hearing would be the way the government provides the process to cure the violation. So the way TSC has framed it and the way we think the district court has framed it, it's missing the part of this that affects Dr. Tresero's interests, which are these very harmful allegations. The reason we structured our testimony the way we did, and we talk about it, was to distinguish the arguable effects of the termination, which TSC did have a contractual right to do with or without cause, from the accusations, which we don't think, which they don't have a right to do. And so that's why we focus our attention on the fact that some of the harm started before the hearing based on the evidence. We also have evidence that the harms continued for a period after this insufficient hearing. In particular, the mental anguish, the duration evidence, is that it was a year and a half where she was losing sleep and unable to sleep because of this. We have evidence that extended well beyond this hearing date. We have evidence from Dr. Tresero before the hearing that she was aware that she was about to be railroaded, this was going to be a sham, and that was trying to affect how she felt. And we have the evidence when she's talking about her finalist interview, where she does mention the hearing. So there's some connection, and we recognize that it's not an enormous amount of evidence, that on a new trial there would be more specific evidence under likely a more specific jury question that's asked. But we think this clears the bar to be sufficient evidence to allow a jury to answer this question in the affirmative and to award something more than nominal damages to Dr. Tresero on this record. Thank you. All right. Thank you, counsel. This concludes our argument in this case. We are going to take the matter under advisement.